UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 21-CR-0017-CVE |
| ) | (22-CV-0082-CVE-CDL) |
| JUAN DIEGO VASQUEZ-ALVAREZ, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Now before the Court is defendant's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 (Dkt. # 38). Under 28 U.S.C. § 2255, "a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." Defendant's § 2255 motion asserts a vague claim of ineffective assistance of counsel, and he appears to be alleging a substantive claim that he received an excessive sentence. Dkt. # 38. Plaintiff has filed a response (Dkt. # 45) and has attached to its response an affidavit of defendant's former attorney, Meredith Curnutte. Defendant has not filed a reply and the deadline to file a reply has expired, and defendant's § 2255 motion is ripe for adjudication.

I.

On December 30, 2020, a magistrate judge signed a complaint charging defendant with possession of methamphetamine with intent to distribute and possession of a firearm in furtherance of a drug trafficking crime. Dkt. # 1. Defendant was arrested and made his initial appearance, and

defendant was unable to afford an attorney. Dkt. # 10. The Court appointed Meredith Curnutte to represent defendant. A grand jury subsequently returned an indictment charging defendant with possession of methamphetamine with intent to distribute (count one) and possession of a firearm in furtherance of a drug trafficking crime (count two). The statutory mandatory minimum sentence for count one was 10 years imprisonment and the maximum sentence was life imprisonment. As to count two, defendant faced a statutory mandatory minimum sentence of five years and a possible sentence up to life imprisonment, and the sentence for count two would be consecutive to any other sentence imposed.

Curnutte received the discovery materials from plaintiff's counsel, and she also requested bodycam footage from the police officers who arrested defendant following a traffic stop. Dkt. # 45-1, at 1. Plaintiff's counsel provided the bodycam footage to Curnutte, and the bodycam footage was consistent with the written materials that she reviewed. The bodycam footage showed that defendant was able to communicate with the police officer in English, even though Curnutte acknowledges that English is not defendant's preferred language. Id. Curnette met with defendant four times for a total of 6.2 hours before the change of plea hearing, and an interpreter was present every time she met with defendant. Id. at 2. Curnutte advised defendant that he would have an advisory guideline range of 168 to 210 months as to count one if he pled guilty. Without acceptance of responsibility, the advisory guideline range for count one would have been 235 to 293 months. Curnutte advised defendant that he would face a statutory mandatory minimum sentence of five years that would run consecutively to count one, whether or not he pled guilty to count one, if he was found guilty of count two. Id. at 2. Plaintiff proposed a plea agreement under which defendant would plead guilty to count one, and plaintiff would agree to dismiss count two and recommend the statutory mandatory

minimum sentence of 120 months as to count one. Id. Curnutte "adamantly" advised defendant that it would be in his best interest to accept the plea agreement, but she told defendant she was prepared to proceed to trial if he did not intend to change his plea. Id. Defendant chose to accept the plea agreement, and the parties agreed to a plea agreement under Fed. R. Crim. P. 11(c)(1)(C) for a sentence of 120 months as to count one.

On March 23, 2021, defendant appeared at the change of plea hearing with Curnutte, and Curnutte advised the Court that defendant intended to change his plea pursuant to a plea agreement. Dkt. # 44, at 2. Plaintiff's counsel explained that defendant agreed to plead guilty to count one with an agreed disposition of 120 months, which was a substantially less than the advisory guideline range. Id. at 3. Plaintiff agreed to dismiss count two of the indictment, which would have resulted in a mandatory minimum consecutive sentence of 60 months in addition to the sentence imposed as to count one. Id. at 3-4. The Court explained to defendant that he would be permitted to withdraw his plea if the Court rejected the plea agreement. Id. at 4. Defendant stated that he was not a citizen of the United States, but he had the ability to understand and read some English. Id. at 6. Defendant represented that he understood the terms of the plea agreement and he was pleading guilty of his own free will. Id. at 9. The Court reviewed with defendant all of the possible consequences of his guilty plea, including imprisonment, monetary fine, restitution, forfeiture, supervised release, and deportation. Id. at 10-16. The Court advised defendant that the plea agreement contained a waiver of appellate and post-conviction rights, and the Court reviewed the terms of the waiver with defendant:

> THE COURT: Do you understand that by entering into this plea agreement and entering a plea of guilty, you are waiving or giving up certain appellate and post-conviction rights?

> THE DEFENDANT: Okay. Yes.
>
> THE COURT: That waiver is contained in paragraph 3 of your plea agreement and I have an obligation to review it with you on the record.
>
> Do you understand that in consideration of the promises and concessions made by the United States in your written plea agreement, you are knowingly and voluntarily agreeing to waive the right to directly appeal your conviction and sentence pursuant to 28, U.S.C., Section 1291 and/or 18, U.S.C., Section 3742(a), except that you reserve the right to appeal from a sentence that exceeds the statutory maximum?
>
> THE DEFENDANT: Okay. Yes.
>
> THE COURT: Do you understand that you are expressly acknowledging and agreeing that the United States reserves all rights to appeal your sentence under 18, U.S.C., Section 3742(b) and the case of *United States v. Booker*?
>
> THE DEFENDANT: Okay. Yes.
>
> THE COURT: Do you understand that you are knowingly and voluntarily agreeing to waive the right to collaterally attack your conviction and sentence pursuant to 28, U.S.C., Section 2255 except for claims of ineffective assistance of counsel?
>
> THE DEFENDANT: Okay. Yes.
>
> THE COURT: Do you understand that you are expressly acknowledging that Ms. Curnutte has explained your appellate and post-conviction rights, that you understand those rights, and that you are knowingly and voluntarily waiving those rights as set forth in paragraph 3 of your plea agreement?
>
> THE DEFENDANT: Yes.

Id. at 17-18. The Court reviewed the constitutional rights that defendant would be waiving by changing his plea, including the right to a jury trial, and defendant acknowledged that he understood the rights he was waiving by proceeding with the plea. Id. at 19-21.

After reading count one of the indictment to defendant, the Court asked defendant to explain in his own words how he committed the charged offense, and defendant admitted that he was traveling from Texas to Tulsa on Highway 75 on December 29, 2020. Id. at 26. Defendant

4

acknowledged that he was traveling to Tulsa with a large quantity of methamphetamine, and he knew that he was transporting at least 500 grams of methamphetamine. Id. at 26-27. The Court found that defendant admitted to the essential elements of count one and advised him that he would receive a sentence of 120 months if the Court accepted the plea agreement at the sentencing hearing. Id. at 28. Defendant stated that he understood the consequences of pleading guilty, but he would also receive the benefit of avoiding a conviction for count two by changing his plea pursuant to the plea agreement. Id. at 29-30. The Court asked plaintiff's counsel to make a representation about the facts it would be prepared to prove if the case went to trial, and plaintiff's counsel stated that this case arose out of a traffic stop that took place on December 29, 2020 in Tulsa. Police officers observed marijuana, a shotgun shell, a pistol, and a container suspected of containing methamphetamine in plain view, and a search of the vehicle resulted in the seizure of 1,968 grams of methamphetamine and a shotgun. Id. at 30. Police officers advised defendant of his Miranda[1] rights, and defendant made a post-Miranda statement that he paid $12,000 for the methamphetamine in Texas. Id. The Court found that defendant adequately admitted to the essential elements of the offense and determined that defendant was knowingly and voluntarily changing his plea. Id. at 31-32. The Court accepted defendant's guilty plea and set the sentencing hearing for June 28, 2021.

A presentence investigation report (PSR) was prepared by the United States Probation Office, and the facts of the offense were consistent with the representations made by plaintiff's counsel at the change of plea hearing. Defendant had a total offense level of 35 with a criminal history category of I, resulting in an advisory guideline range of 168 to 210 months, and the PSR stated that the Court would have to vary downward to accept the plea agreement. At the sentencing hearing, the Court

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

formally accepted the parties' plea agreement and sentenced defendant to 120 months imprisonment. The Court advised defendant that he had a right to appeal his conviction and sentence by filing a notice of appeal within 14 days of the entry of judgment, and defendant stated that he understood his appellate rights. Dkt. # 36. Defendant did not file a notice of appeal and he does not allege that he asked Curnutte to file a notice of appeal. Judgment and commitment was entered on June 28, 2021, and defendant's conviction and sentence became final on July 12, 2021. Defendant filed his § 2255 motion on February 22, 2022, and his motion is timely under § 2255(f)(1).

## II.

Defendant generally alleges that he received ineffective assistance of counsel, and he appears to be asserting a substantive claim that his sentence was excessive.[2] Dkt. # 38. Defendant's § 2255 motion does not contain any allegations that he intended to withdraw his guilty plea and go to trial, and he has also not alleged that he directed his attorney to file a direct appeal of his conviction or sentence. Plaintiff responds that Curnutte reasonably advised defendant to accept a plea agreement that provided a substantial reduction of his sentence, and Curnutte retained the services of an interpreter every time she met with defendant to ensure that he was able to communicate with Curnutte. Dkt. # 45, at 7-9. Plaintiff also argues that defendant's plea agreement contains a waiver of appellate and post-conviction rights, and defendant waived the right to bring substantive claims in a § 2255 motion. Id. at 9-13.

---

[2] Defendant also appears to be requesting leave to file a direct appeal to the Tenth Circuit Court of Appeals. Dkt. # 38, at 2. Defendant's deadline to file a direct appeal of his conviction and sentence has long-since expired, and defendant has made no attempt to show good cause or excusable neglect for failing to file a timely notice of appeal. Fed. R. App. P. 4(b)(4). The Court notes defendant's statements that he now wishes to file a direct appeal, but the Court declines to treat defendant's § 2255 as an untimely notice of appeal or as a motion to file an appeal out of time.

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defendant to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). In Glover v. United States, 531 U.S. 198, 199 (2001), the Supreme Court held that "any amount of actual jail time has Sixth Amendment significance." Thus, the prejudice prong of the Strickland test does not require that any increase in sentence must meet a standard of significance. See United States v. Horey, 333 F.3d 1185, 1187-88 (10th Cir. 2003).

Construing defendant's pro se allegations broadly, defendant could be alleging that he received ineffective assistance of counsel, because he did not understand the proceedings or

Curnutte's advice due to his inability to speak English due the failure to obtain an interpreter. Dkt. # 38, at 1, 12. Curnutte has submitted an affidavit stating defendant understood some English, even if it was not his preferred language, but she made sure that an interpreter was present every time she met with defendant. Dkt. # 45-1, at 2. Curnutte obtained bodycam footage from the police officers who arrested defendant following a traffic stop, and the video showed defendant communicating with the police officers in English. At the change of plea hearing, the Court asked defendant if he understood English, and he replied "a little bit." Dkt. # 44, at 6. The Court provided an interpreter for the change of plea and sentencing hearings and, even if defendant had difficulty communicating in English, this would not have prevented him from understanding or participating in court hearings. Defendant's vague allegations concerning his inability to communicate in English do not show that Curnutte provided ineffective assistance of counsel. Curnutte states that she met with defendant using an interpreter, and the record is clear that the Court provided an interpreter at all court proceedings. Defendant claims that he did not fully understand the consequences of his guilty plea due to his inability to understand English but, at the change of plea hearing, the Court explained to defendant the full range of consequences he faced by proceeding with his plea with the help of an interpreter. Defendant acknowledged that he understood these consequences and that Curnutte had fully explained these consequences to defendant before the change of plea hearing. Dkt. # 30; Dkt. # 44, at 10-18. The Court finds that Curnette made reasonable efforts to ensure that she could communicate with defendant and ensure that defendant understood the consequences of his guilty plea, and Curnette did not provide ineffective assistance of counsel.

Defendant also argues that the sentence he received was excessive, although he does not offer any particular factual or legal arguments in support of this claim. Dkt. # 38, at 4, 12. Plaintiff

responds that defendant waived the right to bring substantive claims challenging his conviction or sentence by entering the plea agreement. Dkt. # 45, at 10-13. The Tenth Circuit has established a three-part test to determine if an appellate and post-conviction waiver is enforceable:

> (1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice . . . .

United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004). In determining the scope of an appellate and post-conviction waiver, a court must strictly construe the waiver in favor of the defendant and evaluate the scope of the waiver "in light of the defendant's reasonable understanding at the time of the guilty plea." United States v. Novosel, 481 F.3d 1288, 1291 n.1 (10th Cir. 2007). Challenges to the voluntariness of a guilty plea generally do not fall within the scope of a waiver. United States v. Weeks, 653 F.3d 1188, 1197 n.4 (10th Cir. 2011). Hahn requires the consideration of two factors in considering whether a defendant knowingly and voluntarily agreed to an appellate and post-conviction waiver. First, the court "examine[s] whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily." Hahn, 359 F.3d at 1325. Second, the guilty plea must be the result of an adequate colloquy under Rule 11. Id. A miscarriage of justice may result "[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful. Id. at 1327 (quoting United States v. Elliot, 264 F.3d 1171, 1173 (10th Cir. 2001)). A defendant may not avoid enforcement of a waiver under the "otherwise unlawful" exception based on alleged errors in the calculation of his sentence, because this exception is focused on the fairness of the proceedings, rather than result of the proceedings. United States v. Smith, 500

F.3d 1206, 1213 (10th Cir. 2007). A miscarriage of justice does not occur when a defendant receives a sentence higher than he expected if that sentence does not exceed the statutory maximum. United States v. Green, 405 F.3d 1180, 1194 (10th Cir. 2005) (courts should consider the statutory maximum, not the defendant's anticipated sentence under the United States Sentencing Guidelines, to determine if a miscarriage of justice has occurred). The defendant bears the burden to show that a miscarriage of justice has occurred. United States v. Maldonado, 410 F.3d 1231, 1233-34 (10th Cir. 2005).

Defendant's challenge to the length of his sentence clearly falls within the scope of his post-conviction waiver. Defendant expressly waived the right to collaterally attack his conviction and sentence, and the first Hahn factor is satisfied. The Court reviewed the post-conviction waiver with defendant on the record, and defendant stated that he understood the specific rights that he was waiving by proceeding with the plea agreement. The plea agreement also states that counsel explained the appellate and post-conviction waiver to defendant and that defendant was knowingly and voluntarily waiving these rights. Dkt. # 31, at 3. The Court finds nothing in the record suggesting that defendant was coerced into accepting a plea agreement with an appellate and post-conviction waiver, and the second Hahn factor is satisfied. Finally, the Court does not find that a miscarriage of justice will result from enforcement of the appellate waiver. Defendant has made no attempt to show that his plea agreement included an appellate and post-conviction waiver for any improper purpose, and the waiver is a standard feature of plea agreements pursuant to Rule 11(c)(1)(C) in this district. The waiver was included in the plea agreement under which defendant received the minimum possible sentence under the circumstances and, in exchange, defendant agreed to waive certain rights. Defendant has received the benefit of the plea agreement, and no miscarriage

of justice will result from enforcement of the post-conviction waiver. Defendant's substantive claim challenging the length of his sentence is dismissed pursuant to the post-conviction waiver contained in defendant's plea agreement.

### III.

The Court has denied defendant's § 2255 motion and the Court must consider whether to issue a certificate of appealability (COA) allowing defendant to appeal the denial of any issue raised in his § 2255 motion. Pursuant to 28 U.S.C. § 2253, a defendant is required to obtain a COA before appealing a final order in a proceeding under 28 U.S.C. § 2255. Section 2253(c) instructs that the court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A defendant can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). After considering the record in this case, the Court concludes that a COA should not issue because defendant has not made a substantial showing of the denial of a constitutional right. The Court does not find that the issues raised by defendant are debatable among jurists or that the Tenth Circuit would resolve the issues differently, and defendant has not made a substantial showing of the denial of a constitutional right.

**IT IS THEREFORE ORDERED** that defendant's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 (Dkt. # 38) is **denied**. A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that the Court declines to issue a COA as to any issue raised in defendant's § 2255 motion.

**DATED** this 2nd day of February, 2023.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE